[No. E023875. Fourth Dist., Div. Two. Jan. 10, 2000.]

CARLA A. THOMAS, Plaintiff and Appellant, v.
DEPARTMENT OF CORRECTIONS, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 3, 4, 5, 8, 9, and 10.

COUNSEL

Law Offices of Leo James Terrell and Leo James Terrell for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Martin H. Milas, Assistant Attorney General, Sylvia M. Diaz and Michael E. Whitaker, Deputy Attorneys General, for Defendant and Respondent.

OPINION

GAUT, J.—

## 1. *Introduction*

Carla A. Thomas (Thomas), an African-American woman, began working at the California Department of Corrections (Department) as a corrections

officer in 1987. She alleges that beginning in 1989 she was subjected to racial and gender discrimination and to retaliation for her reports of such discrimination, all in violation of the California Fair Employment and Housing Act.[1]

She appeals from the trial court judgment sustaining the Department's demurrer to her first amended complaint without leave to amend. She contends that her first amended complaint sufficiently alleged that the Department was guilty of adverse employment actions in retaliation for her charges of discrimination, and, in any event, the trial court erred in sustaining the demurrer without leave to amend.

We affirm the judgment because we conclude that Thomas failed to exhaust her administrative remedies and because the proposed second amended complaint failed to state a cause of action.

## 2. *Facts*

Thomas began work for the Department in March 1987. She began to complain about racial and sexual discrimination in 1989. In May 1993 Thomas filed a complaint with the Equal Employment Opportunity Commission (EEOC)[2] charging the Department with retaliation for her September 1992 charge of discrimination. The alleged retaliation consisted of refusing to allow her a choice of posts or days off and falsely accusing her of refusing to obey orders and "locking down a unit."

Thomas also filed a charge with the Fair Employment and Housing Agency (FEHA) in May 1996 alleging harassment by a correctional sergeant in March and April 1996 because of her sex and race and because she filed an EEOC complaint.

In August 1997 Thomas filed another FEHA complaint. She alleged retaliation consisting of the Department's refusal to provide her medical aid when she became ill at work and its intimidation of coworkers whose depositions she wanted to take in connection with her charges against the Department.

After receiving the necessary right to sue letters from the FEHA, Thomas filed this action on November 20, 1997.

In April 1998 Thomas filed another FEHA complaint in which she alleged retaliation in the form of receiving orders to perform various duties from supervisors who were not "her" supervisors.

[1]Government Code section 12900 et seq.
[2]42 United States Code section 2000e.

Thomas's original judicial complaint alleged Department retaliation in violation of FEHA consisting of refusal to allow medical treatment for two separate medical conditions occurring at work and intimidation of employees whose depositions she sought in connection with her judicial proceeding. Thomas expanded on her retaliation claims when she filed her first amended complaint in June 1998 to include: (1) improper docking of pay despite a medical excuse, (2) undeserved negative performance evaluation, (3) unwarranted interference with her appointment to a supervisory committee of the Chino Valley Federal Credit Union, (4) a series of undeserved negative job evaluations which resulted in a punitive job change and negative reports in her personnel file, and (5) failure of the Department to deliver her a check on a timely basis for her shift differential and for overtime.

The Department demurred to the first amended complaint alleging that two of the retaliatory acts (improper docking of Thomas's January 1994 check and an undeserved April 1996 negative evaluation) had already been adjudicated in a federal lawsuit filed by Thomas. The Department also argued that the remaining retaliatory acts alleged by Thomas did not rise to the level of an adverse employment action, that they were too remote to satisfy a causal connection, and that Thomas did not exhaust her administrative remedies because the acts alleged in the civil complaint were not charged in her FEHA claims.

3.-5.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 6. *Adverse Employment Action*

■ The Department argues that the remaining claims of retaliatory conduct are not cognizable because they did not constitute "adverse employment action." Since there appear to be no California decisions defining the scope of an adverse employment action, the Department quite properly relies upon federal authority. (*Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 475-476 [4 Cal.Rptr.2d 522].)

The federal authority on the definition of adverse employment action varies from federal circuit to circuit. Most circuits agree that an adverse employment action requires "a materially adverse change in the terms of . . . employment." (*Kocsis v. Multi-Care Management, Inc.* (6th Cir. 1996) 97 F.3d 876, 885.)

The inquiry as to whether an employment action is adverse requires a case-by-case determination based upon objective evidence. (*Blackie v. State*

*See footnote, *ante,* page 507.

*of Me.* (1st Cir. 1996) 75 F.3d 716, 725.) As the First Circuit observed in *Blackie*, "[w]ork places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." (*Ibid.*) If every minor change in working conditions or trivial action were a materially adverse action then any "action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." (*Williams v. Bristol-Myers Squibb Co.* (7th Cir. 1996) 85 F.3d 270, 274.)

The Department suggests that adverse employment action is limited to actions like discharge, demotion, and refusal to hire or promote. In *Collins v. State of Ill.* (7th Cir. (1987) 830 F.2d 692, 703, the court said: "We believe adverse job action is not limited solely to loss or reduction of pay or monetary benefits. It can encompass other forms of adversity as well. For example, other courts have found adverse job impact, where there was no reduction in salary or benefits, in an employer's moving an employee's office to an undesirable location, transferring an employee to an isolated corner of the workplace, and requiring an employee to relocate her personal files while forbidding her to use the firm's stationary and support services." (*Ibid.,* fns. omitted.)

While the Fifth Circuit broadly interprets the scope of an adverse employment action (*Rogers v. Equal Employment Opportunity Com'n* (5th Cir. 1971) 454 F.2d 234), most circuits require that the action "be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." (*Crady v. Liberty Nat. Bank and Trust Co.* (7th Cir. 1993) 993 F.2d 132, 136.) The employment action must be both detrimental and substantial. (*Bernheim v. Litt* (2d Cir. 1996) 79 F.3d 318, 327 (conc. opn. of Jacob, C. J.).)

We must analyze Thomas's complaints of adverse employment actions to determine if they result in a material change in the terms of her employment, impair her employment in some cognizable manner, or show some other employment injury. Even if we broadly interpret the definition of adverse employment action based upon the sweeping provisions of the California Fair Employment and Housing Act enacted to "protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed,

color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation" (Gov. Code, § 12920), we do not find that Thomas's complaint alleges the necessary material changes in the terms of her employment to cause employment injury. Most of the actions upon which she relies were one time events, such as a delayed check, an early job change, and failure to receive one overtime check. The other allegations, such as the general assertion that Thomas was assigned more duties than other employees in the same unit, are not accompanied by facts which evidence both a substantial and detrimental effect on her employment.

### 7. *Employment Connection Required*

Our conclusion on the issue of adverse employment action does not resolve the issues raised by the Department. A claim of retaliation must be based upon an adverse *employment* action. Government Code section 12940 makes the *employment practices* described in that section unlawful. Federal law is similar. (*Veprinsky v. Fluor Daniel, Inc.* (7th Cir. 1996) 87 F.3d 881, 886.) Thomas's complaint that a department employee interfered with her appointment as chairperson of the supervisory committee for the Chino Valley Federal Credit Union was not an *employment*-related action and therefore Thomas is not entitled to pursue that claim under the FEHA.

### 8.-10.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### 11. *Disposition*

The judgment is affirmed. Costs are awarded to respondent.

Ramirez, P. J., and Richli, J., concurred.

On January 11, 2000, the opinion was modified to read as printed above.

---

*See footnote, *ante*, page 507.